Case3:14-cv-04573-WHA Document7 Filed10/14/14 Page1 of 17

HARMEET K. DHILLON (SBN: 207872)
Harmeet@dhillonlaw.com
KRISTA L. BAUGHMAN, ESQ. (SBN: 264600)
kbaughman@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Plaintiff
Dr. Rewa Kumar

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**San Francisco Division**

| | |
|---|---|
| DR. REWA KUMAR, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DOE 1, an unknown individual, and DOES 2 through 10,<br><br>Defendants. | Case Number: 3:14-cv-04573<br><br>**PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE** |

Plaintiff's *Ex Parte* Motion for Leave
To Take Limited Early Discovery

-i-

DLG
DHILLON LAW GROUP INC.



## Table of Contents

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

III. ARGUMENT ..... 4

A. Standards for Granting Expedited Discovery ..... 4

B. Dr. Kumar Has Identified the Defendants With Sufficient Specificity ..... 6

C. Dr. Kumar Has Identified All Previous Steps Taken To Locate The Defendants ..... 6

D. Dr. Kumar's Suit Against Defendants Could Withstand a Motion to Dismiss ..... 7

i. First Amendment Rights Do Not Preclude Expedited Discovery ..... 9

ii. Privacy Rights Do Not Preclude Expedited Discovery ..... 10

E. The Exemplary Subpoena Is Likely To Lead to Identifying Information That Will Permit Service of Process ..... 11

IV. THERE IS NO NEED TO TENDER WITNESS AND MILEAGE FEES ..... 12

V. CONCLUSION ..... 13



**Cases**

*Cavalier v. Random House, Inc.*,

297 F.3d 815 (9th Cir. 2002) . . . . . . . . . . 12

*Columbia Ins. Co. v. Seescandy.com*,

185 F.R.D. 573 (N.D. Cal. 1999) . . . . . . . . . . 9

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp*,

606 F.3d 612 (9th Circ. 2010) . . . . . . . . . . 6

*Gillespie v. Civiletti*,

629 F.2d 637 (9th Cir. 1980) . . . . . . . . . . 9

*Goldberg v. Cameron*,

787 F.Supp.2d 1013 (N.D. Cal. 2011) . . . . . . . . . . 12

*Harkonen v. Fleming*,

880 F.Supp.2d 1071(N.D. Cal. 2012) . . . . . . . . . . 12

*Harper & Row Publishers, Inc., v. Nation Enterprises*,

471 U.S. 539 (1985) . . . . . . . . . . 13

*IO Group, Inc. v. Does 1-65*,

No. C 10-4377 SC, 2010 WL 4055667 (E.D. Cal. June 9, 2010) . . . . . . . . . . 8

*Religious Technology Center v. Netcom On-Line Communication Services, Inc.*,

923 F.Supp.1231 (N.D. Cal. 1995) . . . . . . . . . . 14

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,

208 F.R.D. 273 (N.D. Cal. 2002) . . . . . . . . . . 8

*Sony Music Entertainment Inc. v. Does 1-40*,

326 F.Supp.2d 556 (S.D.N.Y. 2004) . . . . . . . . . . 13, 15

*Wells Fargo & Co. v. Wells Fargo Express Co.*,

556 F.2d 406 (9th Cir. 1977) . . . . . . . . . . 9

*Yokohama Tire Crop. V. Dealers Tire Supply, Inc.*,

202 F.R.D. 612(D. Ariz. 2001) . . . . . . . . . . 8

**Rules**

Fed.R.Civ.Proc. 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rule of Civil Procedure 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 15

**Statutes**

17 U.S.C. §107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17 USC §410 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12



## I. INTRODUCTION

Plaintiff Dr. Rewa Kumar ("Dr. Kumar"), by and through her attorneys, Dhillon Law Group Inc., makes this *Ex Parte* Motion for Leave to Take Limited Discovery Prior to a Rule 26(f) Conference pursuant to Federal Rule of Civil Procedure 26(d) ("Motion"), on the grounds that Dr. Kumar has made a *prima facie* showing of copyright infringement and defamation, and without expedited discovery, Dr. Kumar will be unable to identify the Defendants Doe 1 and Does 2 through 10 (collectively, "Defendants") with sufficient particularity to effect service of process or to obtain redress for the infringement. This Motion is supported by the Memorandum of Points and Authorities set forth below and the concurrently filed Declarations of Dr. Rewa Kumar and Krista L. Baughman In Support of *Ex Parte* Motion for Early Discovery (respectively, "Kumar Decl." and "Baughman Decl.").

Dr. Kumar could not obtain a stipulation for this *Ex Parte* Motion because, despite exhausting traditional avenues for identifying Defendants pre-service, neither her nor her counsel can identity the Defendants with whom to confer until the requested discovery takes place. Baughman Decl., ¶9; Kumar Decl., ¶15.

## II. FACTUAL BACKGROUND

Dr. Rewa Kumar is a specialist in Vastu Shastra, the traditional Indian doctrine of architecture and design of Vedic origin. Kumar Decl., ¶2. Dr. Kumar has a Ph.D. degree in Vastu Shastra and over 25 years of experience, and owns and operates a business providing Vastu Shastra consultations to individuals and businesses. *Id.* Dr. Kumar is widely regarded as a foremost authority on the topic of Vastu Shastra. *Id.*

The work at issue in this case consists of certain video clips and a headshot photograph of Dr. Kumar (the "Materials"), which Dr. Kumar commissioned third party AAA Media & Marketing to create for use in Dr. Kumar's promotion and marketing of her Vastu Shastra business. Kumar Decl., ¶4. Dr. Kumar has made repeated use of the Materials in connection with advertising and promoting her Vastu Shastra business, including by broadcasting the video

clips on numerous TV channels, and using the headshot photograph on public websites and in social media. *Id.*, ¶6. The Materials, and the copyrights therein, are solely owned by Dr. Kumar. *Id.*, ¶¶4-5. The Materials are submitted for registration with the U.S. Copyright Office, which received Dr. Kumar's completed applications on October 7, 2014. Baughman Decl., ¶¶2-3, Exh. A; *see also Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612 (9th Circ. 2010) (receipt of complete application by Copyright Office satisfied requirement in Copyright Act for registration before bringing infringement action).

Beginning in August 2014, Dr. Kumar discovered that videos about her had been posted on public websites, including YouTube.com ("YouTube"), Vimeo.com ("Vimeo"), and DiggVideo.com ("DiggVideo") (collectively, the "Third Party Websites"). Kumar Decl., ¶7. These videos (collectively, the "Offending Videos") slander Dr. Kumar's good name and viciously attack her character. *Id.* For instance, the Offending Videos falsely accuse Dr. Kumar of having committed multiple crimes, both in India and in the United States; of defrauding and cheating her business clients and others; and of being unchaste and causing the divorce of third parties. *Id.* According to information available on the Third Party Websites, the Offending Videos were posted by anonymous users of YouTube, Vimeo, and DiggVideo, under aliases including "Truth Walla" (YouTube), "Truth Leaks" (Vimeo), "Rehmat Ali" (YouTube), and "Admin" (DiggVideo). *Id.* The Offending Videos were posted at the following hyperlinks:

- https://www.youtube.com/watch?v=xmLjrwBsgGw (the "Truth Walla Video");
- http://vimeo.com/105926622, (the "Truth Leaks Video");
- www.diggvideo.com/former-indian-beauty-queen-looks-to-con-barack-obama_52a96f38a.html (the "Admin Video");
- https://www.youtube.com/watch?v=3djISeA1gbk (the "Rehmat Ali Video"). *Id.*

In addition to containing highly defamatory statements about Dr. Kumar, the Truth Walla Video, Truth Leaks Video, and Admin Video make use of Dr. Kumar's copyrighted Materials, without Dr. Kumar's authorization or a valid license. Kumar Decl., ¶8. Each of these

videos contain portions of the video clips that Dr. Kumar has consistently used to advertise her Vastu Shastra business, as well as the entirety of the headshot photograph that Dr. Kumar has posted on various public websites in an effort to promote her services. *Id.*, Exhs. B, C, D.

In September 2014, Dr. Kumar's attorneys submitted to YouTube, Vimeo and DiggVideo copyright infringement notifications pursuant to the Digital Millennium Copyright Act ("DMCA"), informing these entities of the infringing nature of the Truth Walla Video, Truth Leaks Video, and Admin Video that had been anonymously posted on their forums. Baughman Decl.,¶4. In response, YouTube and Vimeo each removed the content, but subsequently informed Dr. Kumar's attorneys that they had each received counter notifications in response to Dr. Kumar's DMCA notices, and that the individual submitting this counter notification had identified him/herself, under penalty of perjury, as "Indra Nooyi." *Id.*, ¶¶4-5. Indra Nooyi is the Chairperson and Chief Executive Officer of Pepsi Co., Inc. *Id.*, ¶7. Dr. Kumar's attorneys subsequently spoke with counsel for Pepsi Co., Inc., who confirmed that Ms. Nooyi was not responsible for the posting of the Truth Leaks Video or Truth Walla Video. *Id.*

Accordingly, it appears that Defendants are fraudulently impersonating Ms. Nooyi, a well-known executive, in order to continue to defame Dr. Kumar and infringe upon her copyrights without accountability. Dr. Kumar's attorneys have informed YouTube and Vimeo of this apparent fraudulent impersonation. Baughman Decl., ¶8. In response, YouTube and Vimeo have informed Dr. Kumar's attorneys that the Truth Walla Video and Truth Leaks Video will not be reinstated, although nothing prevents those entities from doing so. *Id.* Dr. Kumar's attorneys have received no response whatsoever from DiggVideo, and a portion of the Admin Video, which makes use of Dr. Kumar's copyrighted Materials, remains posted and publicly available. *Id.*, ¶4. The Rehmat Ali Video also remains posted and publicly available. Kumar Decl., ¶9.

Given that Defendants have used pseudonyms to anonymously post the Offending Videos, and appear to be taking illegal measures to further obscure their identity(ies), there are

very few reasonable steps available to Dr. Kumar to discovery the identity of Defendants, and she and her counsel have taken all such steps, without success. Kumar Decl., ¶15; Baughman Decl., ¶¶ 9-10. Despite the diligent best efforts of Dr. Kumar and her attorneys, Dr. Kumar has not been able to discover the identities of Defendants in order to pursue her valid copyright infringement and defamation claims. *Id.* In order to obtain this critical information, Dr. Kumar seeks leave from the Court to serve a Rule 45 third-party subpoena on Google Inc. (which is the parent company of YouTube), IAC/Interactive Corp. (which is the parent company of Vimeo), and Cloudflare Inc. (which is the network provider that uses and owns the IP address for DiggVideo), prior to a Rule 26 Case Management Conference. Baughman Decl., ¶11. Copies of the proposed subpoenas are attached to this Motion as Exhibit 1.

## III. ARGUMENT

### A. Standards for Granting Expedited Discovery

Rule 26(d) of the Federal Rules of Civil Procedure provides that a party may not seek discovery from any source before the party has conferred as required by Rule 26(f), unless such discovery is authorized by, *inter alia*, a court order. Fed. R. Civ. Proc. 26(d). Courts in this district apply the conventional "good cause" standard in determining whether expedited discovery is warranted under Rule 26(d). *See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *IO Group, Inc. v. Does 1-65*, No. C 10-4377 SC, 2010 WL 4055667, at *2 (E.D. Cal. June 9, 2010); *Yokohama Tire Crop. V. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613-14 (D. Ariz. 2001) (collecting cases and standards). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc.*, 208 F.R.D. at 276. Courts have recognized that "good cause is frequently found in cases involving claims of infringement and unfair competition." *Id.*

According to the Ninth Circuit, "where the identity of alleged defendants will not be known prior to the filing of a complaint[,]…the plaintiff should be given an opportunity through



discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430, n. 24 (9th Cir. 1977) (holding that a district court does have jurisdiction to determine the facts relevant to whether or not it has *in personam* jurisdiction in a given case). The problem of the unknown defendant infringing copyrights has worsened with the growth of the Internet. As discussed by this Court in *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999),

> "With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from Internet Service Provider (ISP) to ISP, with little or no hope of actually discovering the identity of the tortfeasor. In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with an forum [sic] in which they may seek redress for grievances."
>
> *Columbia Ins. Co*, 185 F.R.D. at 577.

In evaluating whether a plaintiff establishes good cause to learn the identity of Doe defendants through early discovery, courts examine whether the plaintiff (1) identifies the Doe defendant with sufficient specificity that the court can determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates that the action can withstand a motion to dismiss, and (4) proves that the discovery is likely to lead to identifying information that will permit service of process. *See Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999). As discussed below, Dr. Kumar has "exhausted traditional avenues for identifying Defendants pre-service" and meets the four good cause factors, and is entitled to expedited discovery. *Columbia Ins. Co.*, *supra*, 185 F.R.D. at 578.



**B. Dr. Kumar Has Identified the Defendants With Sufficient Specificity**

The four-part good cause test requires a plaintiff to "identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court," in order "to ensure that federal requirements of jurisdiction and justiciability can be satisfied." *Columbia Ins. Co, supra*, 185 F.R.D. at 578.

Dr. Kumar has established that the Offending Videos have been posted by subscribers of YouTube, Vimeo and DiggVideo, through specific usernames assigned to those subscribers. *See* Kumar Decl., ¶7. The Third Party Websites reasonably appear to have in their possession information concerning the identities of Defendants, and how to contact them. For example, YouTube's Terms of Service state that in order to post content to YouTube, a user must "create a YouTube or Google Account" and must "provide accurate and complete information." *See* https://www.youtube.com/static?template=terms. Similarly, Vimeo's Terms of Service state that to use the Vimeo services, a user "must register as a member by providing a user name, password, and valid email address." *See* http://vimeo.com/terms#membership. DiggVideo's Terms of Agreement states that to use DiggVideo's services, a user "must register as a member by providing a user name, password, and valid email address" and "must provide complete and accurate registration information," and users are prohibited from using someone else's name. *See* www.diggvideo.com/register.html#terms.

Dr. Kumar has made a satisfactory showing that there is an actual person or persons behind the infringing acts who would be amenable to suit in federal court. Dr. Kumar has further identified the entities that should be served with a subpoena.

**C. Dr. Kumar Has Identified All Previous Steps Taken To Locate The Defendants**

Dr. Kumar and her attorneys have made a good faith effort, without success, to specifically identify the Defendants in order to allow for service of process. Given that Defendants have used pseudonyms to anonymously post the Offending Videos, there are very

few reasonable steps available to Dr. Kumar to discovery the identity of Defendants, and she has taken all such steps. Kumar Decl., ¶15. The pseudonyms "Truth Walla," "Truth Leaks," and "Admin" are clearly not the legal names of any individual, which prevents Dr. Kumar from conducting an investigation into where the posters of the content could be found. Dr. Kumar has searched YouTube, Vimeo and DiggVideo for more information about the users "Truth Walla," "Truth Leaks," and "Admin," respectively, but has been unable to find any contact information for them or other means of locating or communicating with these users. Kumar Decl., ¶16. Although "Rehmat Ali" could arguably be the legal name of an individual, it is impossible to determine which among the thousands (or potentially hundreds of thousands) of individuals currently living with this common Muslim name is responsible for posting the Rehmat Ali Video. *Id.*

Further, it reasonably appears that Defendants have additionally masked their identities by fraudulently impersonating a famous person in opposing Dr. Kumar's DMCA notices. Defendants should not be able to "have their cake and eat it too" – if they want to contest Dr. Kumar's valid copyrights, they cannot hide behind the names of others, but must reveal themselves and appear before this Court. Dr. Kumar has done everything in her power to discover the names of Defendants, and because she has "exhausted traditional avenues for identifying Defendants pre-service," she is entitled to expedited discovery. *Columbia Ins. Co.*, *supra*, 185 F.R.D. at 578

### D. Dr. Kumar's Suit Against Defendants Could Withstand a Motion to Dismiss

Dr. Kumar can establish that her suit against Defendants could withstand a motion to dismiss, and has clearly made "some showing that an act giving rise to civil liability actually occurred and that the discovery is aimed at revealing specific identifying features of the person or entity who committed that act." *Columbia Ins. Co, supra*, 185 F.R.D. at 580. To show direct copyright infringement, a plaintiff "must demonstrate (1) ownership of a valid copyright, and



(2) copying of constituent elements of the work that are original." *Goldberg v. Cameron*, 787 F.Supp.2d 1013 (N.D. Cal. 2011) (internal citations omitted); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

Dr. Kumar has demonstrated that she owns the sole and valid copyright to the Materials, pursuant to a Copyright Assignment Agreement between herself and the creator of the Materials, and as a result of her submission of complete copyright applications with the U.S. Copyright Office. *See* Kumar Decl., ¶¶4-5 and Exh. A; Baughman Decl., ¶¶2-3, Exh. A; *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612 (9th Circ. 2010) (receipt of complete application by Copyright Office satisfied requirement in Copyright Act for registration before bringing infringement action); 17 USC 410(c) (registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate). Dr. Kumar has also demonstrated that the Materials, including portions thereof, were copied and published on YouTube, Vimeo, and DiggVideo, without Dr. Kumar's authorization or a license by Defendants. Kumar Decl., ¶8, Exhibits B, C, D. Accordingly, Dr. Kumar has shown a likelihood of success on the merits of her copyright infringement claim.

Dr. Kumar has also shown a likelihood of success on the merits of her defamation claim. Under California law, to state a *prima facie* case of defamation, a plaintiff must show (1) the intentional publication of (2) a statement of fact that (3) is false (4) unprivileged, and (5) has a natural tendency to injure or which causes special damage. *Harkonen v. Fleming*, 880 F.Supp.2d 1071, 1078 (N.D. Cal. 2012) (internal citations omitted).

Dr. Kumar has submitted sworn testimony showing that the statements published about her in the Offending Videos are unprivileged, false and defamatory *per se*, as they are unsupported by any evidence and accuse her of multiple crimes, fraud on her own clients, and a lack of chastity. Kumar Decl., ¶¶ 7, 9, 10. Dr. Kumar has submitted evidence showing that not only do the Offending Videos have a natural tendency to injure her, but they have in fact caused

substantial and irreparable damage to her profession, career, esteem among her community, and emotional well-being. Kumar Decl., ¶12. In addition, Dr. Kumar has set forth evidence strongly indicating that Defendants published the Offending Videos intentionally and with a malicious intent to harm her reputation and ruin her career, including by resorting to fraudulent impersonation and other illicit tactics to do so. *Id.*, ¶13; Baughman Decl., ¶¶5-8.

**i. First Amendment Rights Do Not Preclude Expedited Discovery**

Defendants' unauthorized use of the copyrighted Materials is not "fair use" such that Defendants could succeed on a motion to dismiss. Under the fair use doctrine pursuant to 17 U.S.C. §107, the Court considers (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. §107; *Harper & Row Publishers, Inc., v. Nation Enterprises*, 471 U.S. 539 (1985).

The U.S. Constitution, at Article I, §8, Clause 8, empowers Congress to provide for an author's exclusive rights to his work, and this grant "is intended to motivate the creative activity of authors and inventors by the provision of a special reward." *Harper & Row*, *supra*, 471 U.S. at 546. "Anonymous speech, like speech from identifiable sources, does not have absolute protection. The First Amendment, for example, does not protect copyright infringement [and]…[p]arties may not use the First Amendment to encroach upon the intellectual property rights of others." *Sony Music Entertainment Inc. v. Does 1-40*, 326 F.Supp.2d 556, 562-63 (S.D.N.Y. 2004). While a person who uses the Internet to download or distribute copyrighted works without permission may be engaging in speech, that person is engaging in speech only to a limited extent, and the First Amendment does not protect the person's identity from disclosure. *See Sony Music Entertainment Inc.*, *supra*, 326 F.Supp.2d 556.

In light of the above authorities and the facts of this case, it is clear that Defendants'

unauthorized use of the Materials was not statutory fair use. Defendants' Offending Videos copy and make use of the *entirety* of the copyrighted headshot photograph and substantially all of the copyrighted video clips. Kumar Decl., ¶8. Defendants do not provide criticism or commentary of the copyrighted Materials in making unauthorized use of them – indeed, Dr. Kumar's video clips are simply played in the background of the Offending Videos, without any alteration or addition to their content whatsoever. *Id.* Accordingly, a finding of fair use is negated by these factors alone. *See, e.g., Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 923 F.Supp.1231, 1250 (N.D. Cal. 1995) ("[i]n balancing the various factors, the court finds that the [large] percentage of plaintiffs' works copied combined with the minimal added criticism or commentary negates a finding of fair use").

Dr. Kumar will be unable to ascertain whether Defendants are enjoying a commercial benefit from their infringing use of the Materials until after she is able to discover Defendants' identities, so this factor carries no weight. Finally, Defendants' continued copying and distribution of the Materials will have a deleterious effect on the value of and the market for Dr. Kumar's license to use the Materials to advertise her business, given that the Materials now have a highly negative association. Kumar Decl, ¶17. Accordingly, Defendants' use of the Materials is not fair use and does not subject this action to a motion to dismiss on that ground.

**ii. Privacy Rights Do Not Preclude Expedited Discovery**

Dr. Kumar is also entitled to discovery in light of Defendants' minimal expectation of privacy. *See Sony Music Entertainment Inc.*, *supra*, 326 F.Supp.2d 556. YouTube's Terms of Service, to which its subscribers – including, on information and belief, Defendants – must commit, requires its subscribers to "agree that Content you submit to the Service will not contain third party copyrighted material" absent authorization from the copyright holder, and Google (which owns YouTube) informs its users that it will share users' personal information where reasonably necessary to "enforce applicable Terms of Service, including investigation of potential violations." *See* https://www.youtube.com/static?template=terms;

http://www.google.com/intl/en/ policies/privacy/. Similar provisions exist in Vimeo's Terms of Service and in DiggVideo's Terms of Agreement. *See* http://vimeo.com/terms#content_restrictions ("You may not upload, post, or transmit any [material] that: infringes any third party's copyrights or other rights…"); http://vimeo.com/privacy (informing that Vimeo may disclose user information where necessary to cooperate with a subpoena or as required by law); www.diggvideo.com/register.html#terms ("You may not upload, post, transmit…any video, image, text, audio recording, or other work…that infringes any third party's copyrights or other rights…[or] contains hateful, defamatory, or discriminatory content…").

Clearly, when Defendants posted the Offending Videos, they were aware that their identities could and would be disclosed by the Third Party Websites if Defendants made improper use of those websites by posting unauthorized content, and Defendants proceeded to do so anyway. Defendants have little expectation of privacy in distributing copyrighted works, including the Materials, without permission, and thus cannot be heard to argue that their privacy rights will be infringed by disclosure of their identities by the Third Party Websites. *See Sony Music Entertainment Inc., supra,* 326 F.Supp.2d 556. For the above reasons, Defendants' First Amendment rights must give way to plaintiffs' right to use the judicial process to pursue a meritorious copyright infringement claim.

**E. The Exemplary Subpoena Is Likely To Lead to Identifying Information That Will Permit Service of Process**

Dr. Kumar requests that the Court issue an order allowing her to immediately (i.e., before a Rule 26(f) conference) serve on Google, IAC/Interactive Corp., and Cloudflare Inc. subpoenas in substantially the same form as the examples attached hereto as Exhibit 1. The example subpoenas identify the Third Party Websites as their ultimate recipients and request production of: "documents sufficient to identify the user who posted content on [Third Party Website], at the URL [ describe], under the name ["User Name"], on or around [date],

including name, address, phone number, and email address of the user."

The information sought by the subpoenas will be sufficient to enable Dr. Kumar to identify the Doe Defendants and facilitate service of process, and will allow her to pursue this action for copyright infringement. Judges of this District have issued similar orders in similar cases. *See, e.g.*, Judge Joseph C. Spero, Case No. CV10-05885-JCS; Magistrate Judge Maria-Elena James, Case No. C10-04471-MEJ; Magistrate Judge Laurel Beeler, Case No. C10-04468-LB.

**IV. THERE IS NO NEED TO TENDER WITNESS AND MILEAGE FEES**

The subpoenas to be issued will be only for production of documents and records. No appearance at a deposition will be required. Rule 45(b)(1) provides that "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person and, *if the person's attendance is commanded*, by tendering to that person the fees for one day's attendance and the mileage allowed by law." Fed.R.Civ.Proc. 45(b)(1) (emphasis added). Rule 45(c)(2)(A provides that "[a] person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, *need not appear at the place of production or inspection unless also commanded to appear for a deposition*, hearing, or trial." Fed.R.Civ.Proc. 45(c)(2)(A) (emphasis added).

To avoid confusion in the event that the Third Party Websites, or any of them, insist upon advance payment of witness and mileage fees, Dr. Kumar requests that the Court's order specify that witness and mileage fees required by Rule 45(b)(1) of the Federal Rules of Civil Procedure do not apply. The Proposed Order includes provisions in this regard.

Case3:14-cv-04573-WHA Document7 Filed10/14/14 Page17 of 17

## V. CONCLUSION

In light of the foregoing, Dr. Kumar respectfully requests that her *Ex Parte* Motion be granted, that the requested subpoenas be issued, and that the Court enter an order substantially in the form of the Proposed Order filed concurrently herewith.

Date: October 14, 2014 DHILLON LAW GROUP INC.

By:

_/s/ Krista L. Baughman ______________
HARMEET K. DHILLON
KRISTA L. BAUGHMAN
Attorneys for Plaintiff
Dr. Rewa Kuma

Plaintiff's *Ex Parte* Motion for Leave
To Take Limited Early Discovery

DLG DHILLON LAW GROUP INC.

-13-